UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH MATIS and CONNIE MATIS,

       Plaintiffs,

v.

MIDWEST REALTY VENTURES, LLC
d/b/a PRUDENTIAL RUBLOFF
PROPERTIES, an Illinois Limited Liability
Company, RONALD ZARANTENELLO, an
individual, and CG MICHIGAN, LLC, an
Illinois Limited Liability Company,

       Defendants,
and

CG MICHIGAN, LLC, an Illinois Limited
Liability Company

       Cross-Plaintiff,

v.

MIDWEST REALTY VENTURES, LLC
d/b/a PRUDENTIAL RUBLOFF
PROPERTIES, an Illinois Limited Liability
Company, and RONALD ZARANTENELLO,
an Individual,

       Cross-Defendants.
                                              /

File No.  1:13-CV-108

HON. ROBERT HOLMES BELL

**O P I N I O N**

This diversity action involving the purchase of a condominium unit is before the Court

on Defendants Midwest Realty Ventures, LLC, d/b/a Prudential Rubloff Properties, and Ronald Zarantenello's motion for summary judgment. (Dkt. No. 46.) For the reasons that follow, Defendants' motion will be denied.

## I.

In late July 2011, Plaintiffs Joseph and Connie Matis, who were vacationing for a week in a condominium at Bridgewater Place in New Buffalo, Michigan, saw a listing for the sale of Unit 9 of the Light Harbor Mooring ("LHM") condominium townhouses (the "Unit"). (J. Matis Dep. 26-28.) Plaintiffs were not in the market to buy anything at the time, but asked to seek the Unit out of curiosity. (J. Matis Dep. 35.) The Unit, commonly known as 18 Oselka Drive, Unit 9, was owned by Defendant CG Michigan, LLC. Defendant Midwest Realty Ventures, LLC, d/b/a Prudential Rubloff Properties ("Prudential Rubloff") served as CG Michigan's broker for the Unit. Defendant Ronald Zarantenello, an independent contractor with Prudential Rubloff, was both the listing agent and the selling agent for the Unit.

Zarantenello showed the Unit to Plaintiffs on August 4, 2011. During the walk-through there was some discussion about rentals, but the nature of those discussion is unclear. Joseph Matis testified that during the first walk-through of the Unit he specifically asked Zarantenello if the Unit could be used as a weekly rental, and Zarantenello replied that it could. (J. Matis Dep. 30, 35.) Zarantenello testified that Matis never asked if the unit could be rented by the week; he only asked how much per week he could get in rent, and

2

Zarantenello answered that question in his subsequent emails. (Zarantenello Dep. 120-21.) In any event, following the showing, Zarantenello sent Joseph Matis an email with the utility costs for the Unit. (Dkt. No. 47, Defs. Ex. 1) Matis responded that they were very interested in Unit 9 for part time occupancy. "Like to gear your thoughts on rental income possibilities. If we wanted to rent out for 16-20 weeks per year is that doable? What [weeks] are not doable?" (*Id.*)

> Zarantenello sent an email in response on August 5:
>
> One of the rental agents we work with is confident the townhome will rent @ $4,500 / week during the summer months, through mid-September.
>
> We know that 14 Oselka is rented at the same rate stated above and is booked all summer long.
>
> Off-season rates would be based on weekend/holiday rates and can be estimated using the booking availability of 14 Oselka.

(*Id.*) Zarantenello sent a second email on August 5, recommending that Matis contact the Light Harbor Moorings Homeowners' Association manager regarding rentals:

> Joe, just sat down at lunch and had a thought. You should contact HLM HOA manager re rentals. I will forward number when I'm back at office.

(Dkt. No. 48, Def. Ex. 7; Dkt. No. 47, Ex. 4, Matis Dep. 75.)

Joseph and Connie Matis spoke with Zarantenello again in front of the Bridgewater Place sales center on August 6, 2011. (Matis Dep. 64.) Zarantenello sent Joseph Matis a follow-up email later that day:

> It was good seeing you this morning in front of the BWP sales center.

3

> I spoke to one of the agents who represents the townhome rental property:
>
> Summer Season:
> End of May through September @ $4,500 / week.  You will be rented for as many weeks as you want during the summer.
> Off Season:  You can expect to be rented @ $500/night with two-night minimum.
>
> High Season gross rental income:  $45,000- $54,000.
> Off Season gross rental income:  $12,000 - $15,000.
>
> Rental agents will hold back 20% as rental fee.

(Dkt. No. 47, Defs. Ex. 2.)  On August 15, 2011, Zarantenello sent Joe Matis an email with the contact information for Steve Paukowits, the property manager of Light Harbor Moorings.

On August 25, 2011, Defendant CG Michigan LLC, accepted Plaintiffs' offer to purchase the Unit for $810,000.  (Dkt. No. 49, Defs. Ex. 10.)  In his August 25 email to Plaintiffs, Zarantenello advised that their attorney acceptance of the agreement was due August 31, that their attorney should get contract changes in by August 30, and that "Attorney also examines condo docs."  (Dkt. No. 49, Defs. Ex. 13.)  The closing on the sale and purchase of the Unit occurred on September 29, 2011.

In February 2012 Mr. Matis was told by Dan Saunders, a Prudential Rubloff vacation rental specialist, that there was a minimum 30-day rental restriction on the LHM condos. (Matis Dep. 173-74.)  Mr. Matis subsequently learned that the rental restriction was for a minimum of 90 days.  (Matis Dep. 179-80, 184.)  The 2007 First Amendment to the Master Deed of Light Harbor Moorings provides that "No Unit shall be leased for a period of less

4

than 90 days without the prior written consent of the Association." (Dkt. No. 48, Def. Ex. 6.)

Plaintiffs filed this action against Prudential Rubloff, Zarantenello, and CG Michigan. Plaintiffs contend that they were induced to purchase the Unit based on Zarantenello's oral and written representations regarding their ability to rent the Unit as income property, which representations were false. Plaintiffs' amended complaint alleges claims for fraudulent misrepresentation (Count 1), silent fraud (Count 2), negligent misrepresentation (Count 3), breach of fiduciary duty (Count 4), and breach of duty of reasonable care (Count 5). (Dkt. No. 35.) Defendants Prudential Rubloff and Zarantenello have filed a motion for summary judgment.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569-70 (6th Cir. 2012) (citing *Matsushita*, 475 U.S. at 587; *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252. The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiffs. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

Defendants contend that Plaintiffs' claims distill down to two propositions: (1) that Zarantenello had a duty to read and interpret the condominium documents for Plaintiffs, and (2) that Zarantenello had a duty to call the LHM Property Manager to inquire about rentals on Plaintiffs' behalf. Defendants contend they are entitled to summary judgment because they had no such duty. Defendants also contend that they are entitled to summary judgment because Plaintiffs' reliance on Defendants' representations was not reasonable as a matter of law.

Plaintiffs object to Defendants' characterization of their claims. Plaintiffs do not appear to contend that Zarantenello had an affirmative duty as a real estate agent to research the condominium rules governing rentals on Plaintiffs' behalf. Instead, Plaintiffs claim that once Zarantenello undertook to provide information on rentals, he had a duty to provide accurate information, and that it was reasonable for them to rely on the information he provided. Plaintiffs also contend that based on Defendants' admissions, summary judgment as to liability only should be entered in Plaintiffs' favor on Counts 4 and 5 for breach of fiduciary duty and breach of the standard of care.

**A.  Misrepresentation Claims (Counts 1, 2, 3)**

The first three counts of Plaintiffs' complaint allege related theories based on misrepresentation. "Common-law fraud or fraudulent misrepresentation entails a defendant making a false representation of material fact with the intention that the plaintiff would rely on it, the defendant either knowing at the time that the representation was false or making it with reckless disregard for its accuracy, and the plaintiff actually relying on the representation and suffering damage as a result." *Alfieri v. Bertorelli*, 813 N.W.2d 772, 775 (Mich. Ct. App.), *app. den.*, 491 Mich. 925, 812 N.W.2d 771 (2012) (citations and quotation marks omitted). "Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 568 (Mich. 2012) (citing *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141 (1919)).

Plaintiffs' fraudulent misrepresentation claim is based on their contention that Zarantenello knowingly or recklessly made false statements regarding Plaintiffs' ability to rent the Unit on a weekly basis. Defendants seek summary judgment on this claim because they have presented evidence that Zarantenello had no knowledge of any rental restrictions prior to closing. In response, Plaintiffs have presented the sworn affidavit of Toni Morris, a rental agent contacted by Zarantenello, stating that she told Zarantenello in August 2011 that the LHM condominiums were subject to a minimum ninety day rental restriction. (Dkt. No. 53, Pls. Ex. C, Morris Aff. ¶ 7.) Morris, however, subsequently told Defendants' counsel that she had no memory of having told Zarantenello about the rental restrictions. (Dkt. No. 54, Defs. Ex. 23, McLeod Aff. ¶ 4). Morris has also sent this Court a copy of a revised affidavit retracting paragraph 7 of her first affidavit, and stating that she does not have independent recollection of any conversations with Zarantenello about rental restrictions at the LHM condominiums. Morris's revised affidavit appears to undermine the evidence Plaintiffs rely on in support of their fraudulent misrepresentation claim. Nevertheless, because Morris's first affidavit supports Plaintiffs' claim, and because this Court is not permitted to make credibility determinations on summary judgment, there are issues of fact for trial regarding Zarantenello's knowledge of the rental restrictions.

A silent fraud claim is essentially the same as a fraudulent misrepresentation claim "except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *Alfieri*, 813

N.W.2d at 775.  The silent fraud doctrine holds that "when there is a legal or equitable duty of disclosure, a fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." *Titan Ins.*, 817 N.W.2d at 569 (2012) (internal quotations and citations omitted);  *see also U. S. Fid. & Guar. Co. v. Black*, 313 N.W.2d 77, 88 (Mich. 1981) ("In order for the suppression of information to constitute silent fraud there must be a legal or equitable duty of disclosure.")  "A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."  *Alfieri*, 813 N.W.2d at 775.   "Silent fraud and negligent misrepresentation both require a defendant to owe a duty to the plaintiff."  *Alfieri*, 813 N.W.2d at 775.

"Generally, the existence of a duty is a question of law for the court to decide, but where certain factual circumstances give rise to a duty, and there are disputed facts, a jury must determine whether those factual circumstances exist."  *Braun v. York Properties, Inc.*, 583 N.W.2d 503, 505 (Mich. Ct. App. 1998) (citing *Howe v. Detroit Free Press, Inc.*, 219 Mich. App. 150, 156, 555 N.W.2d 738 (1996)).

Defendants contend that they are entitled to summary judgment on Plaintiffs' silent fraud and negligent misrepresentation claims because a realtor has no legal duty to review condominium documents or to contact a homeowners association on behalf of purchasers.

9

Plaintiffs have not identified any legal authority to suggest that a broker has a duty in the abstract to go over condominium by-laws with a potential condominium buyer. Nevertheless, the Michigan Supreme Court has recognized "a vendor's duty to disclose material facts when the vendor and purchaser have generally discussed the condition at issue – when the purchaser has expressed some particularized concern or made a direct inquiry – and the seller fails to fully disclose the material facts within the seller's knowledge related to the condition and the buyer detrimentally relies upon the resulting misdirection." *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 38 (Mich. Ct. App. 1998) (citing *Groening v. Opsata*, 323 Mich. 73, 34 N.W.2d 560 (1948)). The record in this case discloses a question of fact as to the nature of Plaintiffs' inquiries – whether they expressed concern with the ability to rent on a weekly basis, or merely the amount of rent that could be charged on a weekly basis. Because there is a question fact concerning the nature of Plaintiffs' inquiries, there is also a question of fact as to whether Defendants' response was misleading or whether it prompted reliance. As noted above, the record also discloses a question of fact as to the nature of Zarantenello's knowledge concerning rental restrictions. Accordingly, whether Defendants had a duty to provide information on rental restrictions cannot be determined on this record.

Defendants also contend they breached no legal duty to Plaintiffs because they specifically encouraged Plaintiffs to recommended that Plaintiffs contact the Homeowners' Association manager regarding rentals, they recommended that Plaintiffs obtain legal advice,

and the relevant information on rental restrictions was available to Plaintiffs in the condominium documents that Defendants forwarded to Plaintiffs on August 5, and were a matter of public record.

As a general rule, there cannot be any fraud if the party allegedly defrauded had the means to determine for himself the truth of the matter. *Alfieri*, 813 N.W.2d at 776; *see also Nieves v Bell Indus., Inc.*, 517 N.W.2d 235, 238 (Mich. Ct. app. 1994) ("[A] plaintiff cannot claim to have been defrauded where he had information available to him that he chose to ignore."). However, this rule is not absolute. The general rule "is only applied when the plaintiffs 'were either presented with the information and chose to ignore it or had some other indication that further inquiry was needed.'" *Alfieri*, 813 N.W.2d at 776 (quoting *The Mable Cleary Trust v. The Edward-Mariah Muzyl Trust*, 262 Mich. App. 485, 501, 686 N.W.2d 770, 783 (2004)). The Michigan Supreme Court has clarified that a party does not have an independent duty to investigate and corroborate representations. *Titan Ins.*, 817 N.W.2d at 568 n.4 (overruling any suggestion in *Mable Cleary Trust* that a party has an independent duty to investigate and corroborate representations). There is no dispute that Defendants provided the condominium documents and recommended that Plaintiffs contact the homeowners association and an attorney. However, Defendants did not specify what kinds of information should be obtained from these other sources, so there is a question of fact as to whether this information was sufficient to put Plaintiffs on notice as to the need to conduct further inquiry regarding weekly rentals.

Defendants contend that they are also entitled to summary judgment on Plaintiffs' misrepresentation claims because all of these claims require an intent to defraud and there is no evidence to support such an intent. Defendants contend that Zarantenello could not have intended Plaintiffs to rely on his representations because he sent the Matises the condominium documents, encouraged them to call the homeowners association, and made several written suggestions that the Matises have their attorney review the documents.

Although Defendants have presented evidence in support of their argument that there was no intent to defraud, Plaintiffs' evidence that Zarantenello assured them that the Unit "will rent @ $4,500 / week during the summer months," and that it could be rented "for as many weeks as you want during the summer," together with his failure to specifically direct them to the condominium documents or the Homeowners Association to find out whether there were restrictions on weekly rentals, are sufficient to create an issue of fact as to Defendants' intent to have Plaintiffs' rely on the information provided.

Finally, Defendants contend that they are entitled to summary judgment on Plaintiffs' misrepresentation claims because Plaintiffs' alleged reliance on Zarantenello's representations regarding weekly rentals was not reasonable as a matter of law. *See Nieves*, 517 N.W.2d at 238 ("A misrepresentation claim requires reasonable reliance on a false representation."). The evidence Defendants rely on in support of this argument includes Plaintiffs' failure to specifically ask about their ability to rent on a weekly basis, Zarantenello's provision of the condominium documents, Zarantenello's advice that

12

Plaintiffs retain an attorney, Zarantenello's advice that Plaintiffs contact the Homeowners Association about rentals, and Plaintiffs' failure to consult any of these sources despite the fact that they were entering into a substantial purchase. Defendants assert that Plaintiffs' claims of reliance on Zarantenello's representations cannot be given much credence because Joseph Matis's was a sophisticated businessman.

Although these factors weigh in Defendants' favor, Plaintiffs have presented conflicting evidence that they did in fact specifically ask Zarantenello about weekly rentals, and that because the rental rates were quoted on a per week basis, they understood that the Unit did not have any weekly rental restrictions. (J. Matis Dep. 55.) They have also presented evidence that they felt no need to consult an attorney or a homeowners' association because Zarantenello had satisfied their concerns with his representations. (J. Matis Dep. 82.)

In light of the conflicting evidence, there is a question of fact for trial regarding the reasonableness of Plaintiffs' reliance. Moreover, to the extent Defendants' argument is based on Joseph Matis' business sophistication, this Court is not permitted to weigh the evidence of to make credibility determinations on a motion for summary judgment. *Alman*, 703 F.3d at 895. The Court concludes for all the reasons stated above that Defendants are not entitled to summary judgment on Plaintiffs' misrepresentation claims.

**B. Breach of Fiduciary Duty and Duty of Care (Counts 4, 5)**

Plaintiffs' fourth and fifth claims allege breach of fiduciary duty and breach of the duty to use reasonable care. There is no dispute that Defendants owed Plaintiffs a fiduciary

13

duty and a duty of reasonable care. However, these claims, like the silent fraud and negligent misrepresentation claims, require the Court to consider what duty of care Defendants owed to Plaintiffs.

Defendants contend that they are entitled to summary judgment on these counts because they did not owe Plaintiffs a duty to interpret condominium documents or to contact the property manager. Plaintiffs, on the other hand, request the Court to consider entering summary judgment in their favor on these counts because Zarantenello admitted that his fiduciary duty included an obligation to assure the information he provided was accurate and not based solely on hearsay. (Zarantenello Dep. 58.) Plaintiffs contend that because Zarantenello relied on Toni Morris for his information on rentals, he breached his fiduciary duty.

As noted in section III(A) above, the scope of the duty owed by Defendants under the circumstances of this case depends on disputed issues of fact, and cannot be determined on summary judgment. Moreover, because the existence or nonexistence of a legal duty is an issue of law for the court, *Braun*, 583 N.W.2d at 505, Zarantenello's testimony on the issue of duty is not dispositive. Accordingly, Defendants' motion for summary judgment on Counts 4 and 5 will be denied, and the Court declines to enter summary judgment for Plaintiffs on these counts.

An order consistent with this opinion will be entered.

Dated: <u>April 15, 2014</u>              /s/ Robert Holmes Bell
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE